# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **IN RE: CVS OPIOID** | ) | Consol. C.A. No. N22C-02-045 |
| **INSURANCE LITIGATION** | ) | PRW CCLD |

Submitted: August 16, 2024
Decided: August 20, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Insurers' Motion for Partial Summary Judgment*
**GRANTED**

*Upon CVS's Motion For Partial Summary Judgment*
**DENIED**

Garrett B. Moritz, Esquire, and R. Garret Rice, Esquire, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Michael S. Shuster, Esquire (*argued*), Daniel M. Sullivan, Esquire, Blair E. Kaminsky, Esquire, and Daniel M. Horowitz, Esquire, HOLWELL SHUSTER & GOLDBERG LLP, New York, New York; Robert M. Mangino, Esquire, and Susan Koehler Sullivan, Esquire, CLYDE & CO LLP, Los Angeles, California, *Attorneys for ACE Property and Casualty Insurance Company, Federal Insurance Company, Indemnity Insurance Company of North America, Vigilant Insurance Company, and Westchester Fire Insurance Company*.

Robert J. Katzenstein, Esquire, and Julie M. O'Dell, Esquire, SMITH KATZENSTEIN & JENKINS LLP, Wilmington Delaware; Christopher J. St. Jeanos, Esquire, WILLKIE FARR & GALLAGHER LLP, New York, New York, *Attorneys for American Home Assurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, P.A., and New Hampshire Insurance Company*.

Bruce W. McCullough, Esquire, BODELL BOVÉ, LLC, Wilmington, Delaware; Karen M. Dixon, Esquire, SKARZYNSKI MARICK & BLACK LLP, Chicago, Illinois, *Attorneys for American Zurich Insurance Company, Zurich American Insurance Company, and American Guarantee & Liability Insurance Company*.

Joseph B. Cicero, Esquire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Adam H. Fleischer, Esquire, R. Patrick Bedell, Esquire, and Allyson C.

Spacht, Esquire, BATESCAREY LLP, Chicago, Illinois, *Attorneys for Great American Alliance Insurance Company, Great American Insurance Company of New York, Great American Insurance Company, and Tamarack American, Inc*.

Louis J. Rizzo, Jr., Esquire, REGER RIZZO & DARNALL LLP, Wilmington, Delaware; Monica T. Sullivan, Esquire, Matthew J. Fink, Esquire, Leena Soni, Esquire, and Stephanie M. Flowers, Esquire, NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP, Chicago, Illinois, *Attorneys for Endurance American Insurance Company, and North American Capacity Insurance Company.*

Sean J. Bellew, Esquire, BELLEW LLC, Wilmington, Delaware; Michael A. Kotula, Esquire, RIVKIN RADLER LLP, *Attorneys for Allianz Insurance Company, Fireman's Fund Insurance Company, Interstate Indemnity Company, and National Surety Company.*

Loren R. Barron, Esquire, KAUFMAN DOLOWICH LLP, Wilmington, Delaware, *Attorney for Gemini Insurance Company, and Berkley National Insurance Company.*

Wade A. Adams, III, Esquire, LAW OFFICES OF WADE A. ADAMS, III, Newark, Delaware; Bryce L. Friedman, Esquire, and Matthew C. Penny, Esquire, SIMPSON THACHER & BARTLETT LLP, New York, New York, *Attorneys for Discover Property and Casualty Company, St. Paul Fire and Marine Insurance Company, Gulf Underwriters Insurance Company, United States Fidelity and Guaranty Company, and The Travelers Indemnity Company.*

Thad J. Bracegirdle, Esquire, Sarah T. Andrade, Esquire, and Emily L. Skaug, Esquire, BAYARD, P.A., Wilmington, Delaware; Edward B. Parks, II, Esquire, and Sara Hunkler, Esquire, RUGGERI PARKS WEINBERG LLP, Washington, D.C., *Attorneys for First State Insurance Company, and Twin City Fire Insurance Company*.

Kevin. J. Connors, Esquire, MARSHALL DENNEHEY, P. C., Wilmington, Delaware; Cheryl P. Vollweiler, Esquire, SKARZYNSKI MARICK & BLACK LLP, New York, New York, *Attorneys for AXIS Insurance Company*.

Philip Trainer, Jr., Esquire, and Marie M. Degnan, Esquire, ASHBY & GEDDES, Wilmington, Delaware; Robert A. Kole, Esquire, and Caroline M. Trusty, Esquire, CHOATE, HALL & STEWART LLP, Boston, Massachusetts, *Attorneys for Liberty Insurance Underwriters, Inc.*, *Liberty International Underwriters, and The Ohio Casualty Insurance Company.*

Marc S. Casarino, Esquire, KENNEDYS CMK LLP, Wilmington, Delaware; Christopher R. Carroll, Esquire, Jillian D. Dennehy, Esquire, and Joshua S. Wirtshafter, Esquire, KENNEDYS CMK LLP, Basking Ridge, New Jersey, *Attorneys for TIG Insurance Company*.

Robert K. Beste, Esquire, SMITH KATZENSTEIN & JENKINS LLP, Wilmington Delaware; Keith Moskowitz, Esquire, DENTONS US LLP, Chicago, Illinois; Kathryn Guinn, Esquire, DENTONS US LLP, Denver, Colorado; Deborah J. Campbell, Esquire, DENTONS US LLP, St. Louis, Missouri, *Attorneys for XL Insurance America, Inc., Greenwich Insurance Company, and The Continental Insurance Company.*

David J. Baldwin, Esquire, Peter C. McGivney, Esquire, and Zachary J. Schnapp, Esquire, BERGER HARRIS LLP, Wilmington, Delaware; Jeffrey L. Schulman, Esquire (*argued*), BLANK ROME LLP, New York, New York, *Attorneys for CVS Health Corporation*.

**WALLACE, J.**

In 2022, the Delaware Supreme Court in *ACE American Insurance Co. v. Rite Aid Corp.* ("*Rite Aid*") held that claims seeking generalized economic damages to redress the opioid crisis were not claims seeking "damages because of bodily injury."[1] Like retail pharmacy giant Rite Aid, CVS was facing thousands of lawsuits related to the opioid crisis (the "Opioid Lawsuits"). In August 2023, this Court applied the *Rite Aid* decision to CVS's request for relief with regards to its insurance claims in defending against the Opioid Lawsuits (the "2023 Decision").[2] Following the 2023 Decision, the parties agreed that there was no coverage for 2,151 Opioid Lawsuits.[3]

The parties now ask the Court to determine whether coverage applies to the remaining Opioid Lawsuits that the parties have been unable to resolve. 62 of the Opioid Lawsuits come from governmental entities, and the other 156 from non-governmental entities, including third-party payors and hospitals.[4] The Court focuses on the exemplar lawsuits presented by the parties and addresses the parties' arguments in support of their motions for summary judgment. For the reasons described below, CVS's motion for partial summary judgment is **DENIED.** The

---

[1] 270 A.3d 239, 241 (Del. 2022).

[2] *In re CVS Opioid Ins. Litig.*, 301 A.3d 1194 (Del. Super. Ct. 2023), *as corrected* (Sept. 14, 2023).

[3] D.I. 395.

[4] Insurers' Motion for Partial Summary Judgment on Remaining Government Lawsuits and Non-Government Entity Lawsuits ("Insurers' Motion") at 2 (D.I. 403).

Insurers' motion for partial summary judgment is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

The procedural and factual background of this action is already described in the 2023 Decision. The Court refers the reader to that decision for a more fulsome summary of the relevant policy provisions and background.

In short, parties across the United States have filed thousands of lawsuits against opioid manufacturers, distributors, and retailers, including CVS.[5] After resolving and settling the Opioid Lawsuits, CVS sought indemnification from various insurance companies (the "Insurers") under the insurance agreements CVS had entered into with the Insurers (the "Policies").[6] Under the Policies, CVS is entitled to coverage for claims that seek "damages because of bodily injury or property damage," including "damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'"[7]

In *Rite Aid*, the Supreme Court interpreted nearly identical language as that in the Policies. It held that coverage for damages because of personal injury was only available to: (a) the person injured; (b) a person recovering on behalf of the person injured; or, (c) people or organizations that treated the person injured or deceased,

---

[5] *In re CVS Opioid Ins. Litig.*, 301 A.3d at 1199.

[6] *Id.*

[7] *Id.* at 1204-5.

who demonstrate the existence of and cause of the injuries.[8] With respect to category (c), the organization "must show that it treated an individual with an injury, how much that treatment cost, and that the injury was caused by the insured."[9] The alleged damages must "depend on proof of bodily injuries" and cannot be for general, non-derivative economic loss.[10]

The Supreme Court held that merely alleging a "causal connection between [ ] counties' economic damages and the injuries to their citizens from the opioid epidemic" did not transform claims seeking redress for the opioid epidemic into claims for personal injury.[11] Opioid Lawsuits must allege "more than some linkage between the personal injury and damages to recover 'because of' personal injury: namely, bodily injury to the plaintiff, and damages sought because of that specific bodily injury."[12] The individual physical injury must be "the basis of the claims," "independently proven, and shown to be caused by the insured."[13] Though the duty to defend is broad, merely alleging "facts that support the economic claims" does not excuse the threshold requirement that the claims allege "damages because of

---

[8]   *Rite Aid*, 270 A.3d at 247.

[9]   *Id.* at 252.

[10]  *Id.* at 250, 254.

[11]  *Id.* at 241.

[12]  *Id.* at 250.

[13]  *Id.* at 250-51.

bodily injury."[14] Eligible claims must seek "damages for personal injury," not "non-derivative economic loss."[15]

The 2023 Decision applied the reasoning in *Rite Aid* to two Opioid Lawsuits that served as bellwether cases in multidistrict litigation (the "Track One Suits"), as well as seven additional exemplar lawsuits that included lawsuits brought by counties in Ohio and New York, as well as the Cherokee Nation, the City of Philadelphia and State of Florida ("Additional Representative Suits").[16] The Court found that the Insurers had no duty to indemnify or defend those lawsuits because those governmental entities did not allege "damages because of 'bodily injury' or 'property damage.'"[17]

Thereafter, the parties filed the instant cross-motions for summary judgment on the remaining Opioid Lawsuits that the parties were unable to resolve.

## II. STANDARD OF REVIEW

The Court "cannot grant any party's motion for summary judgment under Delaware Superior Court Civil Rule 56 unless no genuine issue of material fact exists and that party is entitled to judgment as a matter of law."[18] The Court must

---

[14]  *Id*. at 251.

[15]  *Id*. at 250.

[16]  *In re CVS Opioid Ins. Litig.*, 301 A.3d at 1212-14.

[17]  *Id*. at 1214, 1217.

[18]  *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Ct. Jan. 31, 2019) (citing Del. Super. Ct. Civ. R. 56).

-4-

construe the record "in the light most favorable to the non-moving party."[19]  If the record reveals that material facts are in dispute, then summary judgment will be denied.[20]

The filing of cross-motions for summary judgment doesn't act *per se* as a concession that there are no genuine factual disputes.[21]  Rather, when cross-motions are filed, the Court evaluates each motion separately to determine whether genuine issues of material fact remain.[22]  Because the Court may only grant a motion for summary judgment to one of the parties when there is no disputed issue of material fact and that party is entitled to judgment as a matter of law.[23]

## III.  DISCUSSION

### A. CVS's Motion

CVS seeks a declaration that the remaining Opioid Lawsuits at issue allege "damages because of bodily injury and property damage."  In its motion, CVS categorizes the remaining Opioid Lawsuits at issue into three groups—the Medical

---

[19]  *Merrill v. Crothall–Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).

[20]  *IDT Corp.*, 2019 WL 413694, at *5.

[21]  *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

[22]  *Motors Liquidation Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. Ct. June 19, 2017), *aff'd sub nom., Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.,* 191 A.3d 1109 (Del. 2018).

[23]  *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003).

Provider Lawsuits,[24] the Municipal Lawsuits,[25] and the Third-Party Payor Lawsuits.[26] The Court addresses each.[27]

### 1. The Medical Provider Lawsuits Do Not Allege Damages Because of Bodily Injury.

As with the other groups, CVS insists the Medical Provider Lawsuits fall under category (c) above—people or organizations that treated the person injured or deceased, who demonstrate the existence of and cause of the injuries. If so, under *Rite Aid*, the plaintiff "must show that it treated an individual with an injury, how much that treatment cost, and that the injury was caused by the insured."[28] The alleged damages must "depend on proof of bodily injuries" and could not be for

---

[24] Opening Brief in Support of CVS's Motion for Partial Summary Judgment ("CVS Motion"), Ex. B (*Dall. Cnty. Hosp. Dist., et al. v. Amneal Pharms., LLC*, No. DC-19-18635 (Tex. Dist. Ct. originally filed Nov. 20, 2019), Ex. C (*Hosp. Dist. No. 1 of the Parish of Avoyelles, La., d/b/a Bunkie Gen. Hosp. v. Actavis LLC*, No. 1:20-op-45098 (N.D. Ohio Mar. 9, 2020), Ex. D (*Bristol Bay Area Health Corp. v. Purdue Pharma L.P.*, No. 3:19-cv-00305 (D. Ala. Dec. 2, 2019), Ex. E (*Lester E. Cox Med. Ctrs. v. Amneal Pharms., LLC*, No. 231-CC00459 (Mo. Cir. Ct. Apr. 14, 2020), Ex. F (*Bon Secours Health Sys., Inc. v. Purdue Pharma L.P.*, No. 1:18-op-45821 (N.D. Ohio July 12, 2018), Ex. G (*Fayetteville Ark. Hosp. Co. v. Amneal Pharms., LLC*, No. 72CV-20-156 (Wash. Cir. Ct. Jan. 14, 2020) (D.I. 405).

[25] CVS Motion, Ex. H (*Cnty. of Fresno v. AmeriSourceBergen Drug Corp.*, No. 1:18-at-341 (E.D. Cal. May 9, 2018); *see also Cnty. of Nev. v. AmeriSourceBergen Drug Corp.,* No. 2:18-cv-01152 (E.D. Cal. May 9, 2018); *City of San Jose v. AmeriSourceBergen Drug Corp.,* No. 5:19 cv-04529 (N.D. Cal. Aug. 2, 2019).

[26] CVS Motion, Ex. I (*S. Tier Bldg. Trades Benefit Plan v. Purdue Pharma L.P.*, No. 1:20 op-45239 (W.D.N.Y. July 30, 2020).

[27] CVS also moved on a category called the "Estate Suits," but the parties have reached a resolution on those lawsuits.

[28] *Rite Aid*, 270 A.3d at 252.

general, non-derivative economic loss.[29]

A review of the Medical Provider Lawsuits shows that they do not allege "damages because of bodily injury." The Court cannot find any allegations of individualized bodily injury, or claims based on the cost of treating any one specific individual's injury. CVS highlights allegations in the Medical Provider Lawsuits that the underlying plaintiffs incurred costs because of "uncompensated" care due to CVS's alleged role in distribution and sale of opioids.[30] But those allegations are generalized and are not based on any one specific individual's injury, including the complaints that allege "special injury."[31] A further review of these complaints reveal

---

[29] *Id.* at 250, 254.

[30] CVS Motion at 13.

[31] *See id.*, Ex. B ¶ 1071 ("Plaintiffs have incurred costs by providing uncompensated care for patients suffering from opioid related conditions"), Ex. C ¶ 743 ("[H]ospitals have and continue to incur millions of dollars in damages for the costs of uncompensated care resulting from the unlawful marketing, distribution and sale of opioids"), Ex. D ¶ 14 (seeking damages for the costs of providing medical and therapeutic care; treatment costs for patients suffering from opioid addiction or disease, overdose, or death; and counseling, treatment, and rehabilitation services), Ex. E ¶ 59 ("Plaintiffs have incurred and continues to incur operational costs related to the time and expenses in diagnosing, testing, and otherwise attempting to treat these individuals"), ¶ 533 ("As a proximate result of Marketing and Supply Chain Defendants' conduct, Marketing and Supply Chain Defendants have caused Plaintiffs' injury related to the diagnosis and treatment of opioid-related conditions. Plaintiffs have incurred massive costs by providing uncompensated care as a result of opioid-related conditions."), Ex. F ¶ 7 ("Plaintiffs have incurred substantial expenditures, for which they have not received compensation or reimbursement, in connection with their provision of care to individuals who have been impacted by the opioid epidemic being perpetuated by the Defendants"), Ex. G ¶ 57 ("Additionally, individuals with opioid dependence have presented and continue to present themselves to Plaintiffs claiming to have illnesses and medical problems in an effort to obtain opioids. Plaintiffs have incurred and continues to incur operational costs related to the time and expenses in diagnosing, testing, and otherwise attempting to treat these individuals."), ¶ 807 ("As a proximate result of Marketing and Supply Chain Defendants' conduct, Marketing and Supply Chain Defendants have caused Plaintiffs' injury related to the diagnosis and treatment of opioid-related conditions. Plaintiffs have incurred massive

that the claims are in fact seeking recompense for generalized, economic losses for the opioid epidemic.[32] Under *Rite Aid* and the 2023 Decision, those Opioid Lawsuits do not allege "damages because of bodily injury."

## 2. The Municipal Lawsuits Do Not Allege Damages Because of Property Damage.[33]

CVS argues that the Municipal Lawsuits Allege "damages because of . . . property damage," because there are allegations of damages in the form of needed repairs to infrastructure, including jail facilities, court systems and hospital and treatment facilities.[34] In the 2023 Decision, the Court held that:

> [t]he rationale in *Rite Aid* concerning the requirement to assert claims that seek recovery of damages because of bodily injury is the same when it comes to property damage. In *Rite Aid* the Supreme Court held that "[t]here must be more than some linkage between the personal injury and damages to recover 'because of' personal injury." Here, "bodily injury" and "property damage" appear side-by-side in the Policies, and there is no reason why claims based on property damage

---

costs by providing uncompensated care as a result of opioid-related conditions.").

[32] *See, e.g.*, CVS Motion, Ex. G. ¶ 881 ("Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergent of the sort a hospital would reasonably expect to occur and is not part of the normal and expected costs of a hospital's healthcare services."), Ex. D. ¶ 21 ("The diversion of funding to address a public health crisis like the opioid epidemic . . can have devasting impacts . . ."), Ex. C ¶ 800 ("Plaintiff brings this civil action to recover monetary losses that have been incurred as a direct and proximate result of Defendants' false, deceptive and unfair marketing of prescription opioids."), Ex. F ¶ 233 ("This diversion and the epidemic are direct causes of foreseeable harm to the Plaintiff.").

[33] One of CVS's arguments is that the *Rite Aid* decision created a fourth category of potential groups that seek damages because of bodily injury, specifically, counties who run public hospitals who seek to "recover their actual, demonstrated costs of treating bodily injuries caused by opioid overprescription." CVS Motion at 1. This is a distortion of the Court's holding in *Rite Aid* that elaborates on potential claims that could be brought under category (c).

[34] CVS Motion at 15.

require less of a causal relationship than that required for claims because of bodily injury. Just as the individual physical injury must be "the basis of the claims," so must the property damage be the basis of claims for loss because of "property damage."[35]

Just as with the generalized allegations relating to bodily injury in the Medical Provider Lawsuits, the allegations with regards to property damages are not based on any damage to a specific piece of property. Instead, they broadly describe how the opioid crisis strained healthcare systems and eroded the quality of underlying municipal infrastructure such as jails and treatment facilities. For these reasons, these Opioid Lawsuits do not seek "damages because of . . . property damage."

### 3. The Third-Party Payor Lawsuits

The Third-Party Payor Lawsuits consist of health insurance companies and welfare benefit plan providers. CVS argues that these entities seek to "recover the actual costs incurred for opioid addiction treatment for their members and beneficiaries."[36] Yet without naming any specific members or beneficiaries, CVS highlights allegations that merely state that costs for opioid addiction treatment were "significant," and details the forms in which the increased social spending materialized—"excessive opioid prescriptions, substance abuse treatment services, ambulatory services, emergency department services, and inpatient hospital

---

[35]  *In re CVS Opioid Ins. Litig.*, 301 A.3d at 1216.

[36]  CVS Motion at 25.

-9-

services."[37]  The lack of individualized allegations reveals that these Third-Party Payor Lawsuits are indistinguishable from the rest of the Opioid Lawsuits that seek aggregate economic costs.  While the Third-Party Payor Lawsuits seek damages related to the injuries of others, these Lawsuits do no more than merely allege "facts that support economic claims," not "damages because of bodily injury."[38]

---

[37]  *Id*. at 25-26.

[38]  *Rite Aid*, 270 A.3d at 250.  CVS makes a recycled argument already addressed and rejected in *Rite Aid* that the damages the Third-Party Payor Lawsuits seek are the same as that of a mother whose damages include the costs she incurred on her son's medical care, as described in the Seventh Circuit Decision *Cinncinati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 773 (7th Cir. 2016).  *See Rite Aid*, 270 A.3d at 253.  Furthermore, CVS makes an undeveloped argument in its reply that the removal of the phrase "sustained by a person" from certain of the Policies' definition of bodily injury "incontrovertibl[ly]" meant that the *inclusion* of the phrase was central to *Rite Aid* and the 2023 Decision and a broadening of legal coverage.  CVS's Reply Brief in Further Support of Its Motion for Partial Summary Judgment at 11 (D.I. 417).  It then cites cases from other jurisdiction that included the phrase and therefore concludes, without explanation, that its *exclusion* in certain of the Policies compels a finding of coverage.  First, CVS misconstrues the holdings in *Rite Aid* and the 2023 Decision.  The language cited by CVS doesn't modify the requirement that damages must be "for" or "because of" "bodily injury," which is language in all the Policies.  Second, CVS has waived this argument by failing to properly develop it in its opening brief, merely citing to the language in the fact section, choosing not to raise it until its reply brief, and then, there, failing to develop its argument.  *See* CVS Motion at 5; *Franklin Balance Sheet Inv. Fund v. Crowley*, 2006 WL 3095952, at *4 (Del. Ch. Oct. 19, 2006) (explaining that, "under the briefing rules, a party is obliged in its motion and opening brief to set forth all of the grounds, authorities and arguments supporting its motion" and "should not hold matters in reserve for reply briefs," which "should consist of material necessary to respond to the answering brief"); *In re Mobilactive Media, LLC*, 2013 WL 297950, at *12 (Del. Ch. Jan. 25, 2013) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work. . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (citation omitted).

**B. INSURERS' MOTION**

The Insurers seek a declaration that they have no duty to defend or indemnify CVS for the remaining Opioid Lawsuits at issue. As the movant, the Insurers have the burden to show that no genuine issue of material fact exists that the remaining Opioid Lawsuits do not seek "damages because of 'bodily injury' or 'property damage.'" If that burden is met, then CVS must show there is a genuine issue for trial. The parties have cross-moved on the same issue; though with little overlap, each side has selected different exemplar lawsuits for the Court to examine. The Court therefore addresses each of the exemplar lawsuits raised in the Insurers' Motion independently and asks the reader to excuse the duplicative reasoning. Whereas CVS categorizes its exemplar lawsuits under three categories, Insurers divide theirs into two—Governmental Lawsuits and Non-Governmental Lawsuits. The Court addresses each.

### 1. Governmental Lawsuits

The Insurers contend that the Governmental Lawsuits are "materially indistinguishable" from the "Track One and Additional Representative Suits" covered in the 2023 Decision.[39] Specifically, the lawsuits do not seek recovery for individualized injury or property damage, but instead "seek to recover for budgetary

---

[39] Insurers' Motion at 4.

spending in response to the opioid crisis."[40]

The Court has reviewed the allegations in each of the exemplar complaints and agrees. It has not found a single allegation tying the allegations against CVS to a particular person's injury or individual property's damage. This glaring omission is reflective of the underlying nature of these complaints—that they are seeking generalized economic losses, and therefore not "damages because of 'bodily injury' or 'property damage.'" To be sure, the burden on the Insurers is to essentially prove a negative—that is, upon a review of the allegations in each of these lengthy lawsuits, show that no genuine issue of material fact exists that the allegations in the lawsuits do not seek individualized damages. Though a tedious exercise and a high burden, the Insurers' have shown—and this Court's review of the exemplar lawsuits confirms—that no such genuine issue of material fact exists. In response CVS has not—as it must—raised any genuine issue of material fact. CVS instead raises a variety of arguments already rejected (here and above) and identifies no allegation of individualized injury.

The Insurers offer three exemplar Governmental Lawsuits.[41] Two lawsuits

---

[40] *Id.*

[41] Insurers' Motion, Ex. 3 (*County of Fresno v. Amerisourcebergen Drug Corp.*, 1:18-op-45644 (N.D. Ohio) ("*Fresno*"), Ex. 4 (*Clinch County Hospital Authority v. Amerisourcebergen Drug Corp.*, 1:18-op-45453-DAP (N.D. Ohio) ("*Clinch*"), Ex. 5 (*County of Beaver v. CVS Health Corp.*, et al., 2022-11132 (Pa. Ct. Com. Pl. Del. Cnty.) ("*Beaver County*"). Beaver County was commenced via writ of summons and no complaint was filed. *See* Insurers' Motion Ex. 5. Nonetheless, it was part of a coordinated action in which *Delaware County, PA v. Purdue Pharma, L.P., et al.* was the bellwether case ("*Delaware County*"). CV-2017-008095 (Pa. Ct. Com. Pl. Del.

-12-

state word-for-word that the:

> Plaintiff brings this civil action to eliminate the hazard to public health and safety caused by the opioid epidemic, to abate the nuisance caused thereby, and to recoup monies that have been spent, or will be spent, because of Defendants' false, deceptive and unfair marketing and/or unlawful diversion of prescription opioids.[42]

The third lawsuit states the materially same message:

> This case arises from the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids. The opioid crisis arose from pharmaceutical manufacturers' deliberately deceptive marketing strategy . . . Manufacturers and distributers alike acted without regard for the lives that would be trammeled in pursuit of profit . . . Plaintiff has filed this suit to bring the devasting march of this epidemic to a halt.[43]

The type of damages the Governmental Lawsuits seek is evident—economic damages for the generalized harm caused by CVS's role in contributing to the opioid crisis.[44] Indeed, among the relatively scant county-specific damages alleged in the voluminous complaints, the Court discovers no specific, individualized injury, but instead an array of opioid-related statistics and increased levels of budgetary

---

Cnty.), *See* Insurers' Motion, Ex. 17. CVS disputes that there is any connection between *Beaver County* and *Delaware County*, notwithstanding that the lawsuits share common questions of fact. It then provides no additional explanation why no such connection exists. In light of CVS's failure to adequately distinguish *Beaver County* and *Delaware County*, for purposes of evaluating *Beaver County*, the Court refers to the allegations in *Delaware County*.

[42] *Clinch* ¶ 1; *Fresno* ¶ 1.

[43] *Delaware County* ¶¶ 1-2, 23.

[44] *See, e.g., Fresno* ¶¶ 341, 458; *Clinch* ¶¶ 474; *Delaware County* ¶¶ 876.

spending.[45]

## 2. Non-Governmental Lawsuits

The Insurers contend that the Non-Governmental Lawsuits indisputably indicate that (a) CVS contributed to the public health crisis by over-distributing and dispensing prescription opioids and (b) that the recovery sought was for "budgetary impact without connecting CVS's conduct to any particular individual's bodily injury or damage to any specific property."[46] Just so.

The Insurers offer five exemplar Non-Governmental Lawsuits.[47] Two of the exemplar Non-Governmental Lawsuits come from an insurance fund and employee benefit fund that provided health benefits ("Third-Party Payor Lawsuits"),[48] and the remaining three come from hospital systems, or entities operating hospital systems ("Hospital Lawsuits").[49]

The Third-Party Payor Lawsuits' theory of relief is that CVS's unlawful

---

[45] *See, e.g.*, *Delaware County* ¶¶ 772-90, 901; *Clinch* ¶¶ 55-61; *Fresno* ¶¶ 68-84, 779-795.

[46] Insurers' Motion at 5.

[47] *Id.*, Ex. 8 (*Louisiana Assessors' Insurance Fund v. Amerisourcebergen Drug Corp.*, 1:18-op-46223 (N.D. Ohio) ("*Louisiana Assessors*") (initial complaint), Exs. 9 ("*Lousiana Assessors Supplemented Complaint*") 10 ("*Louisiana Assessors Additional Supplemented Complaint*"); *id.*, Ex. 11 (*Laborers Local 235 Welfare Fund v. Purdue Pharma L.P. et al.*, 1:19-op45792 (N.D. Ohio) ("*Laborers Welfare Fund*"); *id.*, Ex. 12 (*Bon Secours Health System, Inc. v. Actavis*, 1:18-op-45819 (N.D. Ohio) ("*Bon Secours*"), Ex. 13 (*Bon Secours supplemented complaint*); *id.*, Ex. 14 (*Family Practice Clinic of Booneville, Inc. v. Actavis*, 1:18-op-45390 (N.D. Ohio) ("*Booneville*"), Ex. 15 (*Booneville* supplemented complaint); *id.*, Ex. 16 (*Eastern Maine Medical Center v. Teva Pharmaceuticals USA, Inc.*, CV21333 (Me. Super. Ct. Cumberland Cnty.) ("*Eastern Maine*").

[48] *See Louisiana Assessors* and *Laborers Welfare Fund.*

[49] *See Bon Secours*, *Booneville*, and *Eastern Maine*.

conduct contributed to the opioid epidemic, causing the plaintiffs to pay more in health benefits.[50] The specific damages the Third-Party Payor Lawsuits allege are increased prescription drug purchases for its members as well as opioid addiction treatment and other related medical care.[51] None of these lawsuits, however, "show that it treated an individual with an injury, how much that treatment cost, and that the injury was caused by the insured."[52] Instead, the lawsuits rely on generalized economic harm caused to its members in the form of increased prescription purchases and related opioid addiction treatment.

The Hospital Lawsuits fare no better. Those Lawsuits assert claims against distributors like CVS for their misconduct in causing damages in the form of "unreimbursed and/or uncompensated" and increased medical care related to opioid misuse.[53] As indicated by the lack of individualized allegations of damage, these plaintiffs seek damages for the aggregate financial strain placed on their health systems as a result of the opioid epidemic.

As with all the Governmental Lawsuits, the Non-Governmental Lawsuits do not direct their allegations to "an individual injury [or damage to individual property]

---

[50] *See, e.g.*, *Lousiana Assessors Additional Supplemented Complaint* § IV.C; *Laborers Welfare Fund* ¶¶ 9, 11-12.

[51] *See, e.g.*, *Lousiana Assessors Additional Supplemented Complaint* ¶¶ 7, 841-62; *see Laborers Welfare Fund* ¶¶ 772-790.

[52] 270 A.3d at 252.

[53] *Bon Secours* ¶¶ 8, 236-252; *Booneville* ¶¶ 55-59, 244-253; *Eastern Maine* ¶¶ 20, 607.

but to a public health crisis."[54]

### 2. CVS Does Not Raise a Genuine Issue of Material Fact In Opposition to the Insurers' Motion

In opposition to the Insurers' motion, CVS relies on a series of arguments that had already been considered and rejected by this Court and the Supreme Court.

CVS argues that the Insurers misstate Delaware's duty to defend by requiring allegations of specific individual or injuries. Yet, *Rite Aid* addressed this argument head-on. While the duty to defend is broad, the Court must determine "whether the allegations of the complaint, when read as a whole, assert 'a risk within the coverage of the policy.'"[55] Accordingly, "just facts that support economic loss claims" do not give rise to claims for personal injury.[56] The lack of individualized injury only goes to show that these governmental entities are not asserting "a personal injury claim or one for derivative loss, but rather a direct claim for its own aggregate economic injury."[57] The Insurers, therefore, are not misstating Delaware's broad duty to defend for insurance disputes.

Moreover, CVS's argument that focuses on the identity of the plaintiff as a public hospital does not resolve the underlying requirement that the lawsuits

---

[54] *In re CVS Opioid Ins. Litig.*, 301 A.3d at 1207.

[55] *Rite Aid*, 270 A.3d at 251 (citation omitted).

[56] *Id.*; *see also id.* at 252 ("If the complaint does not allege damages covered by the insurance policy, the insurer has no duty to defend.").

[57] *Id.* at 253.

themselves must still seek "damages because of 'bodily injury' or 'property damage.'" While *Rite Aid* held that organizations that directly care for or treat injured persons may be within the classes of plaintiffs covered by the policies' insurance, *Rite Aid* did not hold that membership in such a permitted plaintiff-class inexorably qualifies lawsuits that seek recovery for non-derivative economic loss into claims for personal injury. Furthermore, the only allegations CVS identifies as purportedly showing the requisite damages are in fact generalized damages in the form of increased social and budgetary spending.[58]

Finally, CVS argues that the Insurers are not entitled to a declaration regarding their indemnity duties. This Court already held in the 2023 Opinion that "the development of allegations illustrating the extent of the opioid crisis will not change the fact that the plaintiffs in these underlying complaints have asserted claims for general, economic losses to respond to the opioid epidemic, not personal injury claims."[59] This holding applies equally to the current Opioid Lawsuits based on the nature of the allegations raised therein. Though CVS points to language in a settlement agreement with CVS that provides for resolution of alleged harms and provision of opioid remediation, such harms and opioid remediation do not transform the Opioid Lawsuits into claims for personal injury. CVS has therefore

---

[58] *See Clinch* ¶¶ 9; *Fresno* ¶¶ 10, 458-59.

[59] *In re CVS Opioid Ins. Litig.*, 301 A.3d at 1217.

failed to show any genuine issue of material fact that the Governmental Lawsuits and Non-Governmental Lawsuits do not allege damages because of "bodily injury or property damage."

Accordingly, there is no duty to defend or indemnify the Governmental and Non-Governmental Lawsuits.

## IV. CONCLUSION

For the reasons stated above, the Insurers' Motion for Partial Summary Judgment is **GRANTED**, and CVS's Motion for Partial Summary Judgment is also **DENIED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

Paul R. Wallace, Judge